UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DIANNE J. GREEN                                                                                          PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:19-CV-519-DPJ-FKB

MISSISSIPPI DEPARTMENT OF                                                              DEFENDANT
TRANSPORTATION

ORDER

Plaintiff Dianne J. Green says Defendant Mississippi Department of Transportation (MDOT) violated Title VII by failing to promote her because of her sex.  MDOT now seeks summary judgment on Green's claim.  Mot. [42].  MDOT also asks the Court to strike the affidavit Green submitted with her summary-judgment response.  Mot. [49].  For the following reasons, the motion for summary judgment is denied because questions of fact exist and the motion to strike is considered moot.

I.      Facts and Procedural History

Green began her tenure with MDOT in 2003 when she was hired to work as a clerk.  In 2004, MDOT promoted her to administrative assistant.  Green's current title with MDOT is Administrative Assistant II, and she splits her time between offices in Leake County and Madison County.  Green's job duties are largely clerical, including processing paperwork and creating daily schedules for work crews, though her former supervisor in Madison County often took her out to "r[i]de the road" with him to observe MDOT work sites.  Green Dep. [45-1] at 33–34.

In March 2018, Green's direct supervisor in Leake County, Jeff Sistrunk, announced his intent to retire, and Green applied for his soon-to-be vacant Maintenance Superintendent II position.  The job announcement for the position described the minimum qualifications as

requiring "[e]ight (8) years of experience in maintenance, construction or subprofessional engineering work which developed familiarity with use and care of heavy equipment and engineering instruments, two (2) years of which must have been in a supervisory capacity." Job Announcement [42-4] at 2.

Green says Sistrunk encouraged her to apply for the position but told her she wouldn't get the job for two reasons: "because you're female" and because "you haven't been out in the field." Green Dep. [45-1] at 73. Sistrunk does not recall the conversation but does not deny it. Sistrunk Dep. [45-6] at 17. Green also says that Kent Hailey—the District Maintenance Operations Manager—concurred, explaining that he'd previously heard Randall Copeland—the Assistant District Maintenance Engineer—say he "wouldn't hire [Green] because [she is] a female." Green Dep. [45-1] at 73.

Nevertheless, an interview panel made up of Hailey, Copeland, and District Maintenance Engineer Roy May interviewed Green and three other individuals for the job. Among the other interviewees was James Shawn Lewis, an MDOT Maintenance Technician who had been with MDOT since 2010. Two of the three interviewers ranked Green comfortably ahead of Lewis, and the third had her slightly behind. Nevertheless, they agreed to recommend Lewis to the ultimate decisionmaker, District Engineer Brian Ratliff. Their memorandum recommended that "Lewis be promoted to the position . . . due to his previous work history of operating and maintaining equipment and managing 40+ employees for his previous employer at Walnut Grove Correctional Facility where he trained new employees on policies and procedures prior to them beginning work." Recommendation [42-6]. Ratliff accepted that recommendation and awarded Lewis the promotion.

Believing she was denied the promotion because of her sex, Green filed a charge of discrimination with the EEOC, and on May 13, 2019, she filed this Title VII suit against MDOT in Hinds County Circuit Court. MDOT removed the case to this Court, and following the close of discovery, moved for summary judgment and then to strike Green's affidavit, which she submitted in response to the summary-judgment motion. Both pending motions have been fully briefed, and the Court has personal and subject-matter jurisdiction.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

Title VII prohibits employers from "fail[ing] or refus[ing] to hire . . . any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff can prove intentional discrimination through either direct or circumstantial evidence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Green says she can withstand summary judgment under either path.

    A.     Direct Evidence

"Direct evidence is evidence, which if believed, proves the fact in question without inference or presumption." *Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008) (citing *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 992 (5th Cir. 2005)). Green says Hailey's recounting of what Copeland told him—that Copeland would not hire Green because she is a female—qualifies as direct evidence of discrimination. MDOT says the statement constitutes inadmissible hearsay and otherwise fails the test for direct evidence. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).

        1.     Hearsay Objection

Starting with the hearsay question, Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Thus, Green may not establish direct evidence of discrimination through inadmissible hearsay.

Rule 801(c)(2) defines hearsay as "a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement." And here, there are two out-of-court statements to consider—"what Kent Hailey said [to Green] and what he said Randall Copeland said." Def.'s Reply [48] at 11. For this hearsay within hearsay to be admissible, Green must show that "each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

Green anticipated all of this in her response to MDOT's motion, contending that both statements fall under Federal Rule of Evidence 801(d)(2)(D). That rule excepts from the definition of hearsay a statement "offered against an opposing party" that "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). According to Green, Hailey and Copeland "were authorized to speak on behalf of MDOT and were speaking about the employment decision at issue in the case," thereby rendering the comments admissible under Rule 801(d)(2)(D). Pl.'s Mem. [46] at 17.

MDOT factually attacks Green's argument, contending that she offered no evidence suggesting Hailey or Copeland "were authorized to speak on behalf of MDOT." Def.'s Reply [48] at 11. But Green set her own bar too high. While Rule 801(d)(2)(C) requires proof that the declarant "was authorized to make a statement," Rule 801(d)(2)(D) does not. "Unlike pre-Rule law, no express or implied speaking authority need be established" under Rule 801(d)(2)(D). Weissenberger's Federal Evidence, § 801.20 (Matthew Bender, 7th ed.); *see also Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991) (holding that "it is [not] necessary to show that an employee or agent declarant possesses 'speaking authority,' tested by

5

the usual standards of agency law, before a statement can be admitted against the principal") (cited in *Kelly v. Labouisse*, 364 F. App'x 895, 896 (5th Cir. 2010)).

The appropriate question under Rule 801(d)(2)(D) is whether Copeland and Hailey—both MDOT employees at all relevant times—spoke "on a matter within the scope" of their relationship with MDOT. Fed. R. Evid. 801(d)(2)(D). They did. Other courts have held in the employment context that Rule 801(d)(2)(D) applies where the declarant was "involved in the decision." *Climer v. Harrah's Ent., Inc.*, No. 2:12-CV-47-DMB-JMV, 2014 WL 4692067, at *2 (N.D. Miss. July 23, 2014) (citing *Ramirez v. Gonzales*, 225 F. App'x 203, 210 (5th Cir. 2007) ("Longoria's comments to Walker do not fall within the party opponent exception because they concerned matters outside the scope of her employment, since Longoria was not involved in the decision to terminate Ramirez.")). While neither Copeland nor Hailey made the final decision, they were certainly "involved" in it: they formed two-thirds of the interview committee that recommended giving Lewis the promotion. *Id.* And because both men spoke on a matter within the scope of their employment, the combined statements are not hearsay. Fed. R. Evid. 805.

    2.    *CSC Logic* Factors

The next question is whether Copeland's alleged statement constitutes direct evidence under the *CSC Logic* test. "The presentation of credible direct evidence that discrimination motivated or was a substantial factor in the adverse employment action shifts the burden to the employer to show that, regardless of discrimination, the same decision would have been made." *Reilly*, 271 App'x at 379.

> [I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."

*Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400–01 (5th Cir. 2000) (quoting *CSC Logic*, 82 F.3d at 655).

MDOT says Copeland's alleged statement fails this test because Green produced no "evidence that his comment was proximate in time to the adverse employment decision or related to the employment decision at issue." Def.'s Reply [48] at 7. To answer those points, the Court looks more precisely at what Green said in her deposition:

> Q. Okay. Have you ever heard someone else say, "I heard Randall Copeland say, 'I wouldn't put a woman in that position'"?
>
> A. Yes.
>
> Q. Who told you that?
>
> A. Kent Hailey.
>
> Q. Now, tell me exactly what Kent Hailey told you. Did Kent tell you, "I heard Mr. Copeland say that," or did he just say generally that Mr. Copeland wouldn't?
>
> A. No. He said he heard Mr. Copeland say that.
>
> . . . .
>
> Q. Okay. Now, did you—when did that—have you heard that from Kent Hailey just once or more than once?
>
> A. Just that one time we were together.
>
> Q. When was that?
>
> A. I've got the date. I can't remember the date, but it's in the file. It was shortly before we interviewed for that position.
>
> Q. It was before the interviews occurred?
>
> A. Correct.
>
> Q. Was it before you submitted an application?
>
> A. No.
>
> Q. Your application was in?
>
> A. Yes.

>Q. All right. Now, you would agree with me that—strike that.
>
>The conversation, one conversation, with Kent Hailey in which he said that he heard Mr. Copeland say this, did you bring up—did you initiate that conversation with Kent Hailey?
>
>A. I asked Kent did he want to know what Jeff told me. Jeff told me first, Jeff Sistrunk. He didn't say he heard Randall say it. Jeff, which was my supervisor, he said, "Dianne, you won't get this position, first, because you're female." He said, "Next, you haven't been out in the field."
>
>So shortly after Jeff said that, Jeff—Kent came to the office, probably within 10 or 15 minutes, and I just said—I stated—I said, "Kent, you know what Jeff told me?"
>
>And he said, "What?"
>
>I said, "He said Randall wouldn't hire me because I'm a female."
>
>And he laughed. He say, "He won't." He say, "I've heard him say that."

Green Dep. [45-1] at 71–73.

Green's testimony indicates that the comments related to the current opening and were proximate in time. Green testified that she and Hailey were discussing the vacancy and Hailey heard Copeland say he "wouldn't put a woman in *that* position." *Id.* at 71 (emphasis added). Copeland also allegedly said he "wouldn't *hire* [Green] because [she is] a female." *Id.* at 73 (emphasis added). Green was an existing employee, and the Hailey/Green conversation occurred after she applied for the vacancy. This too indicates Copeland meant the position Green was then seeking to obtain.

And as to the timing, Sistrunk testified that he gave notice of his resignation in March 2018; the job announcement occurred on April 9, 2018; Green applied the following day; she interviewed on April 23, 2018; and the interview committee recommended Lewis on April 24, 2018. A reasonable jury could conclude that Copeland's discussions about the opening happened after the opening occurred and thus within one month of the decision.

8

As noted, the Court may not make inferences whether the statement is "probative as to [Copeland's] discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002). But that does not mean the Court should ignore context-providing record evidence or fail to view the evidence in the light most favorable to the non-movant. *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476–77 (5th Cir. 2015), *as revised* (Feb. 3, 2015) (concluding that evidence "[t]aken together," created "justifiable inference" that proximity-in-time element had been satisfied). No inference is needed to find discriminatory animus from the alleged statements, and the Court finds that Green has created a question of fact under the direct-evidence approach.[1]

---

[1] MDOT briefly mentions in its reply that Green failed to establish the third *CSC Logic* element—that the statement was "made by an individual with authority over the employment decision at issue." Def.'s Reply [48] at 9 (referencing *CSC Logic*, 82 F.3d at 655). According to MDOT, Ratliff made the ultimate decision, not Copeland or Hailey. *Id.* MDOT contends that "Plaintiff has provided no[] evidence or theory by which the alleged comments can be imputed to Brian Ratliff. *Id.* at 3. There are five problems with that. First, the argument was first raised in rebuttal. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs."). Second, Ratliff resisted the suggestion that he made the ultimate decision, testifying in his deposition as follows: "Well, it depends on what you call who made the decision. I went on staff recommendation and obviously agreed with my staff." Ratliff Dep. [42-8] at 13. Third, Copeland and Hailey made the recommendation Ratliff accepted and obviously participated in the employment decision. *See Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999) (finding third element lacking where declarant "did not participate in the ultimate decision to deny Krystek tenure"); *Admire v. Strain*, 566 F. Supp. 2d 492, 512 (E.D. La. 2008) (finding question of fact as to whether direct evidence existed because declarant was not ultimate decisionmaker but may have had influence over the decision). Finally, Ratliff's testimony suggests that Copeland and Hailey's recommendation caused the denied promotion. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) (applying cat's paw theory).

B.     Circumstantial Evidence

Because there is direct evidence of discrimination, there is no need for Green to establish a circumstantial case. Nevertheless, the Court alternatively finds that if Copeland's alleged statements are not direct evidence of discrimination, Green surpasses her burden under the alternative circumstantial-evidence test.

"Where the plaintiff offers circumstantial evidence, the *McDonnell Douglas*[] framework requires the plaintiff to establish a prima facie case of discrimination, which, if established, raises a presumption of discrimination." *Wallace*, 271 F.3d at 219 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish a prima facie case in a failure-to-promote case, a plaintiff must demonstrate:

> (1) that [she] is a member of [a] protected class; (2) that [s]he sought and was qualified for the position; (3) that [s]he was rejected for the position; and (4) that the employer continued to seek [applicants] or promoted [an] applicant[] with the plaintiff's qualifications [who is not a member of the plaintiff's protected class.]

*Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). MDOT says Green's prima facie case fails at the second element "because she was not qualified for the" superintendent position. Def.'s Mem. [43] at 7.

Returning to the job announcement, it described the minimum qualifications as including "[e]ight (8) years of experience in maintenance, construction or subprofessional engineering work which developed familiarity with use and care of heavy equipment and engineering instruments, two (2) years of which must have been in a supervisory capacity." Job Announcement [42-4] at 2. The parties dispute whether experience using and caring for heavy equipment was required or whether *familiarity* with the operation and maintenance of heavy equipment sufficed. *Compare* Def.'s Mem. [43] at 10 ("Upon review of Plaintiff's application and after her interview, it was apparent that she had no experience using, maintaining or caring

10

for heavy equipment and lacked the necessary qualifications for the [p]osition."), *with* Pl.'s Mem. [46] at 19 ("Any fair reading of the job description would dictate that the applicant only had to have 'familiarity' with the operation and maintenance of heavy equipment, and not have actually performed the work herself.").

The job announcement answers that question. It required only that an applicant's maintenance, construction, or engineering experience "developed familiarity with use and care of heavy equipment and engineering instruments." Job Announcement [42-4] at 2. And there is evidence that Green possessed that familiarity. For example, both of Green's supervisors—including the one who held the disputed position—testified that she was qualified for the job. Sistrunk Dep. [45-6] at 19; Luse Dep. [45-4] at 8. Also, she was allowed to interview for the position, suggesting that she was minimally qualified to seek it. And finally, MDOT's EEOC position statement never claimed that Green was unqualified. Indeed, it stated that she "may be able to establish a prima facie case for discrimination" but that the position "was filled by a more qualified candidate." Position Statement [45-19] at 3. MDOT further admitted that "operating the equipment is not explicitly listed in the job description," though "it is clear that having knowledge of the proper and safe use of the equipment is *beneficial* for the position." *Id.* (emphasis added).

The question at the prima facie stage is not whether the additional experience would be beneficial but whether Green "met the minimal qualifications for the position." *Anderson v. Miss. Baptist Med. Ctr.*, No. 3:10-CV-469-TSL-MTP, 2011 WL 3652210, at *2 n.2 (S.D. Miss.

Aug. 18, 2011). Viewing the record in the light most favorable to her, Green has met that burden, and there is no dispute that she satisfies the remaining elements of her prima facie case.[2]

Because Green presented a prima facie case, MDOT "must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 356 (5th Cir. 2019) (quoting *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016)). According to MDOT, it promoted Lewis "based upon his previous work history of operating and maintaining equipment and experience managing over forty employees for his previous employer." Def.'s Mem. [43] at 11; *see also id.* at 12 ("Lewis clearly was the best, qualified candidate for the [p]osition."). This explanation suffices.

The burden therefore returns to Green "to prove either that the defendant's articulated reason is merely a pretext for [gender] discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative)." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013) (citation omitted). "In a mixed-motives case involving an employment decision based on a 'mixture of legitimate and illegitimate motives,' the plaintiff need only prove that the illegitimate motive was a motivating

---

[2] MDOT observes that Green herself admitted that she had no experience in the use and care of heavy equipment and that those were among the minimum requirements for the position. *Id.* at 9 (citing Green Dep. [45-1] at 37). Green has since backed away from that deposition testimony, submitting an affidavit stating that she "believed [she] was qualified for the job of superintendent when [she] applied for the position." Green Aff. [45-15]. MDOT moves to strike it. *See* Mot. to Strike [49]. As noted above, the question is whether Green had *familiarity* with the use and care of heavy equipment. Regardless, her subjective belief that she was qualified does not satisfy her burden at this stage. *See Reno v. Metro. Transit Auth.*, 977 F. Supp. 812, 821 (S.D. Tex. 1997) ("[A]n employee's subjective belief that she is qualified is irrelevant to a prima facie case of discrimination. Rather, it is the perception of the employer that is determinative."). Her affidavit is not, therefore, helpful and will not be considered. MDOT's motion to strike is considered moot.

factor in the decision." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 310 (5th Cir. 2004)).

Green satisfies both tests. To begin, MDOT says she was not promoted because she was not minimally qualified and Lewis was better. *See, e.g.*, Def.'s Mem. [43] at 1. But if Green was not qualified, then why was she allowed to interview for the position? And as noted before, both of her supervisors, Luse and Sistrunk, testified that she was qualified. In fact, Luse was somewhat emphatic on that point; when asked whether he thought she "would have been qualified to be a superintendent," he answered, "I sure do." Luce Dep. [45-4] at 8. Sistrunk—who presumably knew the position and Green's experience better than anyone—agreed. Sistrunk Dep. [45-6] at 19. Sistrunk also testified that the successful male applicant (Lewis) was not qualified. *Id.* at 18. In addition, Green's cumulative interview score was substantially higher than Lewis's, yet the all-male interview committee recommended him for promotion. *See* May Scores [45-14]; Copeland Scores [45-16]; Hailey Scores [45-17]. Green also notes in her pretext argument that MDOT's EEOC position statement never claimed she lacked minimum qualifications. Pl.'s Mem. [46] at 21; *see Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 415 (5th Cir. 2007) (reversing summary judgment where inconsistent statements regarding decision cast doubt on the proffered explanation).

On top of this evidence, Green again mentions her conversations with Sistrunk and Hailey during which she was allegedly told that she would not be hired because she is a woman. As noted, the Court found direct evidence of discrimination. But even assuming the disputed statements were merely "stray remarks," the Court could still consider them because they do not

13

"stand[] alone." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). The alleged statements augment Green's other pretext and motivating-factor evidence.[3]

MDOT offers a response to much of this, but questions of fact persist. Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148–49. Here, there is enough in the record to send the case to the jury. Summary judgment is therefore denied.[4]

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendant's Motion for Summary Judgment [42] is denied and its Motion to Strike [49] is considered moot. Finally, the settlement conference in this case was cancelled. Now that the Court has addressed the pending motions, the parties are instructed to discuss whether the case can be settled with or without mediation or a settlement conference. The parties shall file a joint status report addressing that issue by October 29, 2020.

**SO ORDERED AND ADJUDGED** this the 22nd day of October, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Green also relies on her allegedly superior qualifications to prove pretext, but there is no need to address that often-difficult argument.

[4] Even if Rule 56's standards had been met, the Court "has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).